IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:18-cr-158 |
| Plaintiff, | : | (Senior District Judge Walter H. Rice) |
| v. | : | |
| NASER ALMADAOJI | : | <u>DEFENDANT NASER ALMADAOJI'S MOTION TO SUPPRESS EVIDENCE PURSUANT TO THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION</u> |
| Defendant. | : | |
| | : | |

Now comes the Defendant, Naser Almadaoji, by and through his attorney, pursuant to the search and seizure provisions of the Fourth Amendment to the United States Constitution, Federal Rule of Criminal Procedure 12(b)(3)(C), and pertinent case authority, and moves this Court for an Order suppressing all evidence obtained pursuant to an unconstitutional, warrantless seizure and search of this Defendant's cell phone, including all evidence obtained derivative of this warrantless search and seizure.

Mr. Almadaoji requests an evidentiary hearing on this issue. The Defendant's memorandum in support of this motion is attached.

Respectfully submitted,

/s/ James P. Fleisher
James P. Fleisher (0059509)
BIESER, GREER & LANDIS, LLP
6 North Main Street, Suite 400
Dayton, OH 45402-1908
PHONE: (937) 250-7783
FAX: (937) 223-6339
E-MAIL: jpf@biesergreer.com

Attorney for Defendant, Naser Almadaoji

## MEMORANDUM

On February 16, 2018, the Defendant Naser Almadaoji, a United States citizen, traveled by commercial air to Egypt and Jordan. Mr. Almadaoji returned to the United States on February 24, 2018 through the Chicago O'Hare Airport. At 2:05 p.m. on February 24, 2018, US Customs agents ("Agents") detained Mr. Almadaoji for reasons that are not apparent in the discovery provided to the Defendant. At 2:11 p.m., during the investigation and interview of Mr. Almadaoji, the Agents seized Mr. Almadaoji's Samsung Galaxy cell phone and conducted a search of its contents for approximately one hour and forty-five minutes. The Agents completed the manual examination at 3:56 p.m. that day. Mr. Almadaoji's phone was returned to him at the completion of the detention and interview.

Unbeknownst to Mr. Almadaoji, the Agents did more than perform a cursory examination of the phone for contraband. Instead, they logged and recorded certain personal and sensitive data from the cell phone, including but not limited to: biographical data; his social security number; address information; e-mail account information; and personal identifying information from various online messenger applications. The information collected and recorded by the Agents from Mr. Almadaoji's phone during the February 24, 2018 interrogation was later used to obtain additional evidence that would have not been discovered but for the initial search of Mr. Almadaoji's phone on February 24, 2018.

The Defendant is moving to suppress the evidence seized in this search on the grounds that:

(1) Any consent allegedly given by Mr. Almadaoji was not voluntary;

(2) To the extent that any consent was validly provided, the search and extraction of data exceeded the scope of the consent given;

(3) The search of the phone and recording of the data extracted exceeded the scope of a routine border search requiring no level of suspicion: and

2

(4) The Agents did not have reasonable suspicion to conduct a nonroutine search of Mr. Almadaoji's phone.

Regarding the first and second grounds supporting this Motion to Suppress, Government officials are permitted to conduct searches without a warrant or probable cause based upon an individual's consent, so long as that consent:

(1) was voluntary, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); and

(2) came from someone authorized to give it. *United States v. Matlock*, 415 U.S. 164, 172 (1974).

Whether consent was voluntary is a question of fact reviewed under a "clearly erroneous" standard. *United States v. Canipe*, 569 F.3d 597, 604 (6th Cir. 2009). The scope of the consent search may not exceed the scope of the consent given. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *United States v. Caldwell*, 518 F.3d 426, 430-31 (6th Cir. 2008). The scope of consent is determined by asking how a reasonable person would have understood a conversation between the officer and the third-party when consent was given. *Id.* Generally, the expressed object of a search defines the scope of the consent, unless the third-party giving consent expressly limits its scope. *Id.*

The Defendant respectfully requests that the Court conduct an evidentiary hearing in this matter to adduce facts material to the legality of the search in question. The Defendant moves the Court to suppress the evidence the Government seized in this search on the grounds that, consent to the search of the cell phone was not voluntarily given, and to the extent that any consent was given, the scope of the search exceeded the scope of any consent.

Regarding the third and fourth grounds listed in support of this Motion, the Supreme Court has recognized a broad exception to the Fourth Amendment's requirement of probable cause or a warrant for searches conducted at the border. *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). Border searches typically do not require any particularized suspicion, so long as they are

3

routine inspections and searches of individuals or conveyances seeking to cross our borders. *See United States v. Montoya De Hernandez,* 473 U.S. 531, 538, 105 S. Ct. 3304, 3309 (1985); *United States v. Ramsey,* 431 U.S. 606, 619, 97 S. Ct. 1972, 1980 (1977).

However, the border search exception is not without limits. The "ultimate touchstone" of the Fourth Amendment remains "reasonableness." *See, United States v. Montoya De Hernandez,* 473 U.S. 531, 538 (1985). The Supreme Court also has recognized a category of "nonroutine" border searches that are constitutionally reasonable only if based on individualized suspicion. *Id.* 541; *United States v. Ramsey,* 431 U.S. 606, 616 (1977). The distinction between routine and nonroutine border searches depends upon the degree of invasiveness or intrusiveness associated with any particular type of search. *United States v. Feiten,* 2016 U.S. Dist. LEXIS 30331, *7-8 (E.D. Mich. March 9, 2016); *United States v. Braks,* 842 F.2d 509, 511-12 (1st Cir. 1988). The Court has suggested that "nonroutine" border searches may include "highly intrusive searches of the person" that infringe on the "dignity and privacy interests of the person being searched," *Flores-Montano,* at 152.

It is well established that a non-forensic or "manual" search of electronics is properly categorized as a routine search that does not require any particularized level of suspicion. *See United States v. Stewart,* 729 F.3d 517, 525 (6th Cir.2013) (finding that a routine border search of a laptop computer is reasonable without any level of suspicion); *United States v. Cotterman,* 709 F.3d 952, 960 (9th Cir.2013) (finding the suspicionless "cursory" search of the defendant's cell phone and image files reasonable under the border exception).

The Circuit courts are currently split regarding the scope of a routine manual border search of cell phones or electronics, and the Sixth Circuit does not appear to have directly addressed the issue. The Ninth Circuit court recently provided that manual or routine border searches of cell

4

phones should be limited to an investigation to determine whether the phone contains contraband, such as child pornography, while the suspect is at the border or functional equivalent. *United States v. Cano*, 934 F.3d 1002, 1018 (9th Cir. 2019). The Ninth Circuit, in part relying on *Riley v. California,* 573 U.S. 373, 134 S. Ct. 2473 (2014), found that the recording and processing of phone numbers, data from the call log, and messages received by the defendant exceeded the proper scope of the routine border search because the officers' actions had no connection to ensuring that the phone lacked digital contraband. *Id.* at 1019.[1] *See also, United States v. Kim*, 103 F. Supp. 3d 32, 44, 46, 59 (D.D.C. 2015) (finding the forensic search of laptop at border unreasonable where search was expected to reveal evidence of past but not ongoing criminal activity and there was little to no evidence indicating that crime was afoot.); *but see, United States v. Wanjiku*, 919 F.3d 472, 485-486 (7th Cir. Ill. March 19, 2019) (rejecting the argument that *Carpenter* and *Riley* demand an increased expectation of privacy in electronics during a border search).

The First and Fourth Circuits hold a more expansive view of the border exception. The Fourth Circuit argues that "[t]he justification behind the border search exception is broad enough to accommodate not only the direct interception of contraband as it crosses the border, but also the prevention and disruption of ongoing efforts to export contraband illegally." *United States v. Kolsuz*, 890 F.3d 133, 143-44 (4th Cir. 2018). Likewise, the First Circuit similarly rejects the courts position in *Cano* by stating that the border exception is not limited to searches for contraband and may include evidence of cross-border crimes. *Alasaad v. Mayorkas*, 988 F.3d 8, 20-21 (1st Cir. Mass. February 9, 2021). The Ninth Circuit Court, on the other hand, has held that

---

[1] The *Riley* Court determined that the search incident to arrest exception does not apply to searches of cell phones. *Riley v. California,* 573 U.S. 373, 134 S. Ct. 2473 (2014). The Court supported its position by recognizing that modern cell phones contain large quantities of personal data and information, which "implicate[s] privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 393. Ultimately the Court determined that the search of an arrestee's cell phone required a warrant due to the large quantities of sensitive records and information that would typically not be revealed to the government during the most exhaustive search of the home. *Id.* at 396-397.

5

routine manual cell phone border searches should be limited to searches for evidence of contraband and not past or future related crimes. *Cano,* at 1017.

In addition to the issues surrounding Mr. Almadaoji's consent to the search, the Defendant respectfully requests that the Court conduct an evidentiary hearing in this matter to adduce facts material to the extent of the manual search of Mr. Almadaoji's phone, including the recording and processing of the contents and sensitive data found on his cell phone. The Defendant moves the Court to suppress the evidence seized in this search on the grounds that the intrusive search of the cell phone conducted by the Agents on February 24, 2018 exceeded the scope of a routine border search. Moreover, the cell phone search was not supported by any individualized or reasonable suspicion.

Respectfully submitted,

/s/ James P. Fleisher
James P. Fleisher (0059509)
BIESER, GREER & LANDIS, LLP
6 North Main Street, Suite 400
Dayton, OH 45402-1908
PHONE: (937) 250-7783
FAX: (937) 223-6339
E-MAIL: jpf@biesergreer.com

Attorney for Defendant, Naser Almadaoji

### CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April 2021, I filed the foregoing document with the Clerk of Courts, United States District Court, Southern District of Ohio, by way of the Court's CM/ECF system which will send notification to all parties of record.

/s/ James P. Fleisher
JAMES P. FLEISHER (0059509)

2900.218270.\ 843522.1