IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:18-cr-158 |
| Plaintiff, | : | (Judge Walter H. Rice) |
| v. | : | |
| | : | DEFENDANT'S MOTION TO |
| NASER ALMADAOJI | : | <u>EXCLUDE EXPERT TESTIMONY</u> |
| | | <u>AND REQUEST FOR *DAUBERT*</u> |
| Defendant. | : | <u>HEARING</u> |

Now comes the Defendant, Naser Almadaoji, by and through counsel, and moves the Court to exclude or alternatively, to greatly limit, the anticipated testimony of Lorenzo Vidino, an expert witness for the Government. This motion is based on the attached memorandum of points and authorities and accompanying exhibits, the United States Constitution, the Federal Rules of Criminal Procedure, Federal Rules of Evidence, and all other applicable constitutional, statutory and case authority and such evidence and argument that may be presented to the Court.

               Respectfully submitted,

               <u>/s/ James P. Fleisher</u>
               James P. Fleisher (0059509)
               BIESER, GREER & LANDIS, LLP
               6 N. Main Street, Suite 400
               Dayton, OH 45402-1809
               PHONE: (937) 250-7783
               FAX:   (937) 223-6339
               E-MAIL:  jpf@biesergreer.com

               ***Attorney for Defendant, Naser Almadaoji***

## INTRODUCTION

At Mr. Almadaoji's jury trial, the government proposes to call Lorenzo Vidino as a "terrorism expert." Dr. Vidino, the director of George Washington University's Program on Extremism, will testify, among other things, "on the topics of ISIS (including its various aliases), ISIS Wilayat Khorasan (including its various aliases), radicalization, history, ideology, objectives and leadership of ISIS and ISIS Wilayat Khorasan, the relationship between ISIS and ISIS Wilayat Khorasan, areas of control of ISIS and ISIS Wilayat Khorasan, routes of travel to territory controlled by ISIS and ISIS Wilayat Khorasan, conflicts involving ISIS and ISIS Wilayat Khorasan, process of joining ISIS and ISIS Wilayat Khorasan, ISIS and ISIS Wilayat Khorasan's recruiting efforts, and common indicators/methods of radicalization of individuals who join and attempt to join ISIS and ISIS Wilayat Khorasan." *See* Exhibit A, Excerpt of August 18, 2021 Correspondence Concerning Expert Notice ("Gov. Notice"). Dr. Vidino's specific opinions is as they pertain to Mr. Almadaoji and the bases and reasons for those opinions are largely absent in the government's expert witness notice.

More problematic is that this proposed testimony – which is nothing more than the government's attempt to introduce inadmissible "terrorist profile evidence" – is contradicted by Dr. Vidino's own conclusions in his written works. A short time ago, Dr. Vidino opined that "there is no single demographic and socio-economic background, no single psychological profile and no single trajectory that characterizes individuals who radicalize." Lorenzo Vidino, Francesco Marone, Eva Entenmann, *Fear Thy Neighbor: Radicalization and Jihadist Attacks in the West* at 77 (2017). Dr. Vidino's proposed testimony is accordingly unhelpful to the jury, unreliable and unduly prejudicial to Mr. Almadaoji. The testimony should be excluded. At a minimum, this

Court should hold a hearing under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) to determine whether Dr. Vidino's testimony is admissible in this case.

## STATEMENT OF FACTS

Mr. Almadaoji is charged with "knowingly attempt[ing] to provide material support and resources to ISIS and ISIS Wilayat Khorasan in the form of personnel (namely, himself), to work under ISIS's and ISIS Wilayat Khorasan's direction and control," in violation of 18 U.S.C. § 2339B. Doc. 29, Page ID #134. He is also charged in a second count with attempt to provide material support and resources to ISIS, namely translation services, again under 18 U.S.C. §2339B. *Id.* Jury trial is set to start on September 27, 2021. Doc. 59.

On August 18, 2021, the government gave notice to Mr. Almadaoji that it plans to call Dr. Vidino as a "terrorism expert" at Mr. Almadaoji's jury trial. *See* Exh. A, Gov. Notice.[1] The government's notice explained Dr. Vidino would testify that:

- "ISIS and ISIS Wilayat Khorasan are and were at the times relevant to this case designated foreign terrorist organizations;"

- "ISIS and ISIS Wilayat Khorasan engage in terrorist activity and engaged and have engaged in terrorism, and that this is widely and commonly known. The Government anticipates he will explain what Isis and ISIS Wilayat Khorasan are, what they do, what they stand for, what their goals and objectives are, how they behave and act, how they differ from, compete with, or relate to other extremist groups and entities, the types, nature, and extent of terrorist activity and terrorism they engage in, specific acts of terrorism perpetrated by them, and how and where one joins these groups, including common routes

---

[1] The government also gave notice of its intent to present other expert witnesses. This motion only concerns the proposed testimony of Lorenzo Vidino, and no other noticed experts.

3

and methods of travel, common features, traits, and behaviors of those seeking to join, and common tactics and methods used to join;"

- "background information on organizations within the global jihadist movement, to include AQ, Al Qaeda in Iraq and ISIS, the religious and historical trends that gave rise to these groups, and these groups goals, leadership styles and structures;"
- "the processes by which individuals in foreign countries, some of whom have seemingly little connection to terrorist organizations, come to act in support of those organizations;"
- "physical attacks conducted or attempted by ISIS and ISIS Wilayat Khorasan and persons inspired by ISIS and ISIS Wilayat Khorasan and the specific vocabulary and imagery used by ISIS and ISIS Wilayat Khorasan supporters."

Exh. A, Gov. Notice at 1-2. The government explains that Dr. Vidino's testimony will be based on "his years of experience, training, and research. . . " *Id.* at 2.

## ARGUMENT

This Court should exclude the proposed expert testimony of Dr. Vidino for five reasons. First, the government failed to provide an adequate written summary of his opinion as required by Federal Rule of Criminal Procedure 16. Second, his testimony is unhelpful, unreliable and thus inadmissible under Federal Rules of Evidence 702 and 703. Third, Dr. Vidino's proposed testimony constitutes inadmissible bad character evidence. Fourth, Dr. Vidino's proposed testimony would permit introduction of testimonial hearsay without providing Mr. Almadaoji the opportunity for cross-examination, violating Mr. Almadaoji's Sixth Amendment right to confront the witnesses against him. Finally, Dr. Vidino's testimony is unduly prejudicial, confusing, and of low probative value and thus should be excluded under Federal Rule of Evidence 403. At a

4

minimum, this Court should hold a *Daubert* hearing or a witness *voir dire* to determine whether Dr. Vidino's proposed testimony should be admitted.

I. **By Only Listing Potential Testimony Topics Without Describing Dr. Vidino's Specific Opinions or the Bases and Reasons for those Opinions, the Government's Expert Notice is Deficient Under Federal Rule of Criminal Procedure 16.**

Federal Rule of Criminal Procedure 16 requires the government give the defendant a "written summary" of any expert testimony it intends to use at trial. Fed. R. Crim. Pro. 16(a)(1)(G). That summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. *Id.* Rule 16 exists so the "parties – and the district court – may be adequately prepared for trial." *United States v. W. R. Grace*, 526 F.3d 499, 512 (9th Cir. 2008); see also *United States v. White*, 492 F.3d 380, 406 (6th Cir. 2007).

The summary must "describe" the expected testimony, not simply list potential topics. *See* Fed. R. Crim. Pro. 16(a)(1)(G). The Sixth Circuit determined that, to satisfy Rule 16, it is not sufficient for an expert summary to simply list general subject matters about which the expert intends to testify, but fail to identify what opinion the expert would offer on those subjects. *White*, 492 F.3d at 407; see also *United States v. Anderson-Bagshaw*, 509 Fed. Appx. 396, 410 (6th Cir. 2012) (finding expert summary deficient because it failed to adequately identify the opinions held by the expert). See also *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics). Additionally, the Sixth Circuit has affirmed the exclusion of expert testimony where the expert summary provided an "extremely vague" description of the bases of the opinion. *See United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008) (finding that expert summary failed to adequately indicate bases of opinion because "if Davis had hired a chemist, he or she would not have been able to analyze the steps that led the government's chemists to their conclusions.").

5

Here, the government's expert notice lists several topics without describing the opinions Dr. Vidino plans to offer about those topics in any useful detail. Most problematic is the government's claim that Dr. Vidino will testify about "specific acts of terrorism [by ISIS and ISIS Wilayat Khorasan], and how and where one joins these groups, including common routes and methods of travel, common features, traits and behaviors of those seeking to join, and common tactics and methods used to join." *See* Exh. A, Gov. Notice at 2. The government's notice states "Dr. Vidino will place that evidence in the broader context of ISIS and ISIS Wilayat Khorasan's activities during the charged period, and explain how the defendant's statements, actions, and interests are consistent with those of an individual who attempted to provide material support to ISIS and ISIS Wilayat Khorasan." *Id.* at 2. The notice does not provide adequate explanation of "the bases and reasons" for these opinions. *See* Fed. R. Crim. Pro. 16(a)(1)(G).

Without knowing the rough boundaries of what Dr. Vidino's opinion is and how he reached that opinion, Mr. Almadaoji cannot "adequately prepare[] for trial." *See W. R. Grace,* 526 F.3d at 512. Rule 16 lists possible remedies for a failure to comply with the rule, including ordering compliance, granting a continuance, prohibiting a party from introducing the evidence or entering any other order "just under the circumstances." Fed. R. Crim. Pro. 16(d)(2). This Court may exclude a government witness to remedy a violation of Rule 16. *See White,* 492 F.3d at 406. This sanction is particularly appropriate in a complex case with a large volume of discovery, such as this one. *See W. R. Grace,* 526 F.3d at 516. It is also appropriate in a case like this that hinges almost entirely on Mr. Almadaoji's subjective intent and mental state, and where – as explained in more detail later – there are serious concerns that the government seeks to improperly admit

6

prejudicial character evidence to carry its burden. Mr. Almadaoji respectfully requests this Court to exclude Dr. Vidino because of the government's noncompliance with Rule 16.

II.     **Dr. Vidino's Proposed Testimony Is Inadmissible Under *Daubert* and Federal Rules of Evidence 702 and 703 Because It is Unhelpful to the Jury and Unreliable**.

Federal Rules of Evidence 702 sets forth four requirements that must be met before an expert witness may give opinion testimony at trial: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of the expert has the burden of proving admissibility. *United States v. Leblanc*, 45 F. App'x 393, 400 (6th Cir. 2002).

In *Daubert*, the Supreme Court explained Rule 702 assigns courts a "gatekeeping role" and charges them with ensuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. This gatekeeping role requires courts to assess "whether the reasoning or methodology underlying the testimony is valid and [] whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* at 592-93.

*Daubert* sets forth a non-exhaustive list of factors bearing on the reliability of expert testimony: (1) whether the theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer-review and publication, (3) the known or potential rate of error, (4) whether there are standards controlling the technique's operation, and (5) the degree of acceptance within the relevant field. *Id.* at 593-94. Although *Daubert* addressed scientific testimony, "the district court's duty to act as gatekeeper and to assure the reliability of proffered expert testimony before admitting it applies to all (not just scientific) expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*,

7

526 U.S. 137, 147 (1999)); see also *Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 484 (6th Cir. 2002) (Finding that "the Supreme Court extended the Daubert analysis to non-scientific expert testimony.").

The Sixth Circuit has interpreted *Daubert* to require district courts to engage in a two-step inquiry. *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). A district court first must determine "'whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'" *Id.* (quoting *Daubert*, 509 U.S. at 592-93). In the second step, a district court should ensure that the "proposed expert testimony is relevant . . . and will serve to aid the trier of fact," and also determine whether the testimony "fit[s]." *Id.*

Federal Rule of Evidence 703 governs the inquiry into the reliability of particular data underlying expert testimony. *Laski v. Bellwood*, No. 96-2188, 1997 U.S. App. LEXIS 34117, at *6-7 (6th Cir. Nov. 26, 1997). That rule requires an expert to base an opinion "on facts or data in the case that the expert has been made aware of or personally observed' as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Coleman v. United States*, No. 18-3413, 2018 U.S. App. LEXIS 35812, at *3 (6th Cir. Dec. 19, 2018) (quoting Fed. R. Evid. 703).

The government cannot meet its burden of proving either the usefulness or the reliability of Dr. Vidino's proposed testimony. His testimony should therefore be excluded.

### A. Dr. Vidino's Proposed Testimony Would Not Help the Jury.

#### 1. Testimony About the Violent Actions of Foreign Organizations and Individuals Who Have No Connection to This Case Will Not Help the Jury.

The government's notice also says it expects Dr. Vidino to testify about "background information on organizations within the global jihadist movement, to include AQ, al-

8

Qaeda in Iraq and ISIS. . ." Exh. A., p. 2. The Government further expects Dr. Vidino to discuss "certain high profile figures within terrorist organizations. . ." *Id.* at p. 1. Based on these broad statements from the government, it seems Dr. Vidino could testify about almost any leader of almost any foreign terrorist organization. The government has given no reason why testimony about any of these figures would help the jury determine whether Mr. Almadaoji attempted to provide material support to ISIS Wilayat Khorasan. Testimony about various foreign terrorist organization leaders and their violent activities will not help the jury resolve the most salient legal issue in this case – whether Mr. Almadaoji attempted to provide material support to ISIS Wilayat Khorasan. *See* Fed. R. Evid. 702(a).

At Mr. Almadaoji's trial, the government will not have to prove that ISIS Wilayat Khorasan is a violent, fundamentalist organization. Mr. Almadaoji stipulates that ISIS Wilayat Khorasan is a designated terrorist organization and will not argue otherwise. The government does have to prove that Mr. Almadaoji was attempting to provide himself as personnel to ISIS Wilayat Khorasan. Having Dr. Vidino testify about the abhorrent actions of these other unrelated persons and groups will not help the jury decide that issue. *See* Fed. R. Evid. 702(a).

### B. Dr. Vidino's Research, Which Is the Basis of His Proposed Testimony, Is Unreliable.

In addition to being useful, expert testimony must also be reliable. Dr. Vidino's testimony is neither.

The government does not explain the basis for Dr. Vidino's testimony in any detail other than noting it is based on his "years of experience, training, and research," and attaching his *curriculum vitae*. *See* Exh. A, Gov. Notice at 2. Mr. Almadaoji is therefore left to assess the reliability of Dr. Vidino's proposed testimony based on the two works listed in his *curriculum vitae* that seem most related to this case: *Fear Thy Neighbor* from 2017 and *ISIS in America* from 2015.

9

These reports, co-authored by Dr. Vidino as part of his work at George Washington University's Program on Extremism, are recent, include cases from the United States and at least mention ISIS Wilayat Khorasan. However, Dr. Vidino's research, as demonstrated in these reports, does not meet the requirements of Rule 702, Rule 703 or *Daubert* and his testimony should therefore be excluded as unreliable.

### 1. Dr. Vidino's Research Uses Statistically Insignificant Sample Sizes.

Rule 702 explains a qualified expert may testify if "the testimony is based on sufficient facts or data." Fed. R. Evid. 702(b). Rule 703 similarly requires the proponent of the expert testimony to demonstrate that the particular facts and data underlying the expert's opinion are reliable. Fed. R. Evid. 703; *Piskura v. Taser Int'l, Inc.*, No. 1:10-cv-248-HJW, 2013 U.S. Dist. LEXIS 107611, at *5-6 (S.D. Ohio July 31, 2013). Dr. Vidino's facts and data are neither sufficient nor reliable.

Dr. Vidino's facts and data are insufficient in part because he does not use statistically significant sample sizes in his research. In *Fear Thy Neighbor*, for example, he identifies fifty-one successful terrorist attacks and then attempts to extrapolate "radicalization patterns" from those cases. Vidino, *Fear Thy Neighbor* at 15, 101. Only sixteen of these attacks took place in the United States, and it appears none were by ISIS Wilayat Khorasan members. *Id.* at 16. As Dr. Vidino himself recognizes, the number of cases in his report is "statistically insignificant." *Id.* at 77, 82. Similarly, in *ISIS in America*, Dr. Vidino uses seventy-one cases. Vidino, *ISIS in America*, at 33. Again, this is not a statistically significant sample size. Nor has Dr. Vidino done any kind of formal statistical analysis on his data in either report. *See Daubert*, 509 U.S. at 594 ("in the case of a particular scientific technique, the court ordinarily should

10

consider the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation.").

Furthermore, the data and facts underlying Dr. Vidino's research are unreliable. *See* Fed. R. Evid. 703. In *Fear Thy Neighbor*, Dr. Vidino mostly cites unverifiable online sources. In *ISIS in America*, his primary sources are federal criminal complaints filed against individuals accused of terrorism crimes. *See* Vidino, *ISIS in America* at *5 ("our researchers reviewed more than 7,000 pages of legal documents detailing ISIS-related legal proceedings, including criminal complaints, indictments, affidavits, and courtroom transcripts"). Facts alleged in a complaint are not necessarily true or reliable and instead represent what the government believes occurred in those cases. Those records also do not tell the whole story of those cases. In *ISIS in America*, Dr. Vidino explains researchers also interviewed "prosecutors, reporters, and, in some select cases, families of the charged individuals." Vidino, *ISIS in America* at 5. That too is an inadequate analysis of what actually happened to those specific people in their unique situations.

### 2. Dr. Vidino's Work is Descriptive and Theoretical, Not Scientific.

Expert testimony must be "the product of reliable principles and methods." Fed. R. Evid. 702(c). *Daubert* explained that means there should be some testability to the expert's theory or technique, a known error rate, peer-review and standards controlling the technique's operation. 509 U.S. at 593-94. Dr. Vidino's work meets none of these tests. His reports are not peer-reviewed. His theories are just ideas. They are not measurable. There are no error rates or controls. This testimony fails the requirement that "the reasoning or methodology underlying the testimony is scientifically valid" and "can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

For example, in *ISIS in America*, Dr. Vidino discusses the case of Ariel Bradley, a young woman who left Tennessee to join ISIS in Syria. Relying on a *BuzzFeed* article, Vidino speculates about what made her join the terrorist organization:

> It is tempting to caricature Bradley as a naïve girl with personal problems whose jihadist trajectory is the outcome of an unfortunate childhood. It is also easy to assume that her actions were driven by a quest for a romantic partner. But, even in the most extreme cases, multiple factors contribute to an individual's decision. Her friend's analysis highlights this dynamic: "Be it religion, be it a man, be it a marriage, be it a child, be it ISIS, Ariel was always looking for something to define herself, an identity to cling to." Given her particular pattern of behavior, it is likely that Bradley might have accepted other extremist ideologies, if circumstances allowed, so long as they satiated her hunger for community, love, and identity.

Vidino, *ISIS in America*, 17 (quoting Ellie Hall, "How One Young Woman went from Fundamentalist Christian to ISIS Bride," *BuzzFeed*, July 20, 2015).[2] Dr. Vidino did not interview Ms. Bradley, or review any court or medical records involving her. He appears to have developed his theory that she "might have accepted other extremist ideologies, if circumstances allowed, no long as they satiated her hunger for community, love, and identify," based on a single *BuzzFeed* article that quoted certain of Ms. Bradley's friends.

This descriptive work is unreliable as the basis for expert testimony at trial. *Daubert* limits expert testimony to opinions derived from rigorous, testable science and social science that carry the traditional indicia of reliability, such as acceptance by peer-review and measurably low error rates. *See* 509 U.S. at 593-94.

Most strikingly, Dr. Vidino himself acknowledges that concluding anything about how or why persons joint foreign terrorist organizations is mostly guesswork. As he wrote in *Fear Thy Neighbor*: "The enormous heterogeneity of profiles among Western jihadists clearly

---

[2] *Available at* https://www.buzzfeed.com/ellievhall/woman-journey-from-chattanooga-to-isis?utm_term=.nuVaOrgA6#.mlrjVpyJx.

demonstrates that there is no single demographic and socio-economic background, no single psychological profile and no single trajectory that characterizes individuals who radicalize." Vidino, *Fear They Neighbor* at 77. In fact, Dr. Vidino has repeatedly expressed that view in his writings. In *ISIS in America*, Dr. Vidino wrote, "radicalization is a highly complex and individualized process, often shaped by a poorly understood interaction of structural and personal factors." Vidino, *ISIS in America* at 15. Later in that same report, he wrote there "is no standard recruit profile." *Id.* at 33.

If there is no "standard recruit profile," then everyone and no one is a potential terrorist. And it means that Dr. Vidino's theories about what characteristics are or are not "consistent with those of an individual who attempted to provide material support to ISIS and ISIS Wilayat Khorason," are nothing but conjecture. *See* Exh. A, Gov. Notice at 2. His testimony is based on unreliable methodology and is accordingly inadmissible.

### 3. Dr. Vidino Cannot Reliably Apply His Theories to Mr. Almadaoji.

Rule 702(d) asks whether the "expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Dr. Vidino's proposed testimony fails this prong as well. Dr. Vidino cannot reliably apply his theories to Mr. Almadaoji because the two have never met. Furthermore, since Dr. Vidino concludes that there is "no standard recruit profile" of a terrorist, he cannot then opine that Mr. Almadaoji fits the nonexistent profile. Vidino, *ISIS in America* at 33. Dr. Vidino's proposed testimony is therefore inadmissible under Rule 702.

### III. Dr. Vidino's Proposed Testimony Is Inadmissible Character Evidence.

Courts "assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595. In addition to Rules 702 and 703, Dr. Vidino's proposed testimony implicates Federal Rules of Evidence Rule 404(a). That rule

13

prohibits evidence "of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1).

The Sixth Circuit limits the Government's ability to rely on "profile evidence" under Fed. R. Evid. 404. *United States v. Baldwin*, 418 F.3d 575, 581 (6th Cir. 2005). Courts have condemned the use of profile evidence as substantive evidence of guilt. *Id.*; *see Rodriguez v. Renico,* No. 99-10481-BC, 2002 U.S. Dist. LEXIS 23620, at *15 (E.D. Mich. Oct. 15, 2002) ("the admission of drug courier profile evidence in a criminal trial for the purpose of proving that the defendant fit the profile and therefore must be guilty is per se erroneous"); U*nited States v. Cruz,* 981 F.2d 659, 663 (2d Cir. 1992) (finding that "guilt may not be inferred from the conduct of unrelated persons" and condemning the prosecution's "injection of a defendant's ethnicity into a trial as evidence of criminal behavior").

However, law enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish 'modus operandi' of particular crimes. *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004). Nonetheless, "every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officers in investigating criminal activity." United *States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (quoting *United States v. Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983).

Similarly, the Ninth Circuit provided that "[T]estimony of criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial." *United States v. Gillespie,* 852 F.2d 475, 480 (9th Cir. 1988). Criminal "profile evidence is inherently prejudicial to the defendant because the profile may suggest that innocuous events indicate criminal activity." *United States v. Lim*, 984 F.2d 331, 335 (9th Cir. 1993).

14

Here, the government seeks to have Dr. Vidino testify about typical paths of radicalization and travel to presumably show that Mr. Almadaoji's actions were "consistent with those of an individual who attempted to provide material support to ISIS and ISIS Wilayat Khorasan." *See* Exh. A, Gov. Notice at 2. That is, Dr. Vidino will testify that Mr. Almadaoji fits the character profile of a terrorist. This is precisely the kind of inadmissible character evidence the Sixth Circuit has routinely prohibited. Dr. Vidino's testimony should thus be excluded.

IV.    <u>**Dr. Vidino's Proposed Testimony Violates the Confrontation Clause.**</u>

The Sixth Amendment of the United States Constitution gives Mr. Almadaoji the right "to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. In *Crawford v. Washington,* the Supreme Court explained the admission of testimonial hearsay violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine that person. 541 U.S. 36, 68 (2004). A statement is testimonial when "the circumstances objectively indicate" that "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822-23 (2006). *Crawford* itself explained "*ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially" are "testimonial" under the Sixth Amendment. *Crawford,* 541 U.S. at 51.

*Crawford* applies in the context of expert testimony. "An expert witness's reliance on evidence that *Crawford* would bar . . . becomes a problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert . . ." *United States v. Rios*, 830 F.3d 403, 417 (6th Cir. 2016) (quoting *United States v. Johnson*, 587 F.3d 625, 635

15

(4th Cir. 2009)). An expert opinion may not be "merely repackaged testimonial hearsay." *United States v. Vera*, 770 F.3d 1232, 1239 (9th Cir. 2014); *see also Rios*, 830 F. 3d at 418 (finding an experts use of hearsay evidence inadmissible if the expert simply "parrots another individual's out-of-court statement."

Dr. Vidino's proposed testimony is exactly that: "repackaged testimonial hearsay." *Id*. His research relies primarily on federal criminal complaints and other legal documents. *See, e.g.,* Vidino, *ISIS in America* at 5 ("our researchers reviewed more than 7,000 pages of legal documents detailing ISIS-related legal proceedings, including criminal complaints, indictments, affidavits, and courtroom transcripts"). These legal documents – complaints, indictments, affidavits – are quintessential testimonial hearsay, intended for use in a later criminal prosecution. *See Crawford*, 541 U.S. at 51; *Davis*, 547 U.S. at 922-23. The FBI agents and federal prosecutors who made these testimonial statements are likely to be unavailable for Mr. Almadaoji to cross-examine at his jury trial.

Thus, introducing these statements through Dr. Vidino's proposed expert testimony allows the government to use Dr. Vidino as "little more than a conduit or transmitter for testimonial hearsay," in violation of the Confrontation Clause. *See Gomez*, 725 F.3d at 1129.

V. **Dr. Vidino's Proposed Testimony Should Be Excluded Because It is Unfairly Prejudicial, Confusing, and of Low Probative Value.**

Even when a court determines testimony is relevant and otherwise admissible, Federal Rule of Evidence 403 nonetheless permits a court to exclude the evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir.

16

1992). *United States v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008) (finding abuse of discretion where the trial court admitted evidence of slight probative value and likelihood of unfair prejudice).

Dr. Vidino's proposed testimony will prejudice the jury against Mr. Almadaoji unfairly. The government seeks to have Dr. Vidino testify generally about the violent actions of various terrorist organizations, including ISIS. It is difficult to think of a more prejudicial topic than ISIS, particularly considering the recent and highly publicized conflict with ISIS Wilayat Khorasan in Afghanistan. The group's name alone evokes fear and horror. Permitting Dr. Vidino to testify about ISIS and ISIS Wilayat Khorasan will prejudice the jury against Mr. Almadaoji. *See Kennedy v. Lockyer*, 379 F.3d 1041, 1056 (9th Cir. 2004) ("the use of gang membership evidence to imply 'guilt by association' is impermissible and prejudicial") (quoting *United States v. Garcia*, 151 F.3d 1243, 1246 (9th Cir. 1998)); *see also United States v. Hendrix,* No. 94-1404, 1995 U.S. App. LEXIS 8676, 1995 WL 218472 (6th Cir. April 12, 1995) (finding the use of gang evidence irrelevant and unduly prejudicial under Fed. R. Evid. 403, because it implied that the defendant was engaged in gang activity).

Moreover, Dr. Vidino's testimony about ISIS will be misleading and confusing to the jury. Dr. Vidino's definition of "terrorism" is but one example of testimony that will confuse jurors. Dr. Vidino uses the European Union definition of "terrorism" as violence "perpetrated by individuals, groups, networks or organizations that evoke their very particular interpretation of Islam to justify their actions." *See* Vidino, *Fear Thy Neighbor* at 38 (internal quotation marks omitted). This definition does not match the relevant federal definition of "terrorism" in this case, which is "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups of clandestine agents." 22 U.S.C. § 2656(d)(2); *see also* 18 U.S.C. § 2339B (cross-referencing the same definition). Federal law does not define "terrorism" in terms of any

one religion. Defining "terrorism" by reference to Islam is likely to confuse jurors, who will need to follow the federal definition, and prejudice them against Mr. Almadaoji because of his religion.

In sum, Dr. Vidino's proposed testimony is "of very slight (if any) probative value." *Hitt*, 981 F.2d at 424. It is unreliable and unhelpful. It is inadmissible character evidence. Because there is more than "a modest likelihood of unfair prejudice or a small risk of misleading the jury," this Court should exclude Dr. Vidino's testimony under Rule 403. *Id.*

## CONCLUSION

For the foregoing reasons, Mr. Almadaoji respectfully requests that this Court exclude Dr. Vidino as a witness, or, at a minimum, hold a *Daubert* hearing.

Respectfully submitted,

/s/ James P. Fleisher
James P. Fleisher (0059509)
BIESER, GREER & LANDIS, LLP
6 N. Main Street, Suite 400
Dayton, OH 45402-1809
PHONE:	(937) 250-7783
FAX:	(937) 223-6339
E-MAIL:	jpf@biesergreer.com

***Attorney for Defendant, Naser Almadaoji***

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2021, I filed the foregoing document with the Clerk of Courts, United States District Court, Southern District of Ohio, by way of the Court's CM/ECF system which will send copies to all parties of record.

/s/ James P. Fleisher
JAMES P. FLEISHER (0059509)

2900.218270.\ 864382.1