IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | Case No. 3:18-cr-158 |
| v. | : | JUDGE WALTER H. RICE |
| NASER ALMADAOJI, | | |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION IN
LIMINE TO PRECLUDE TESTIMONY ABOUT VIOLENCE BY
TERRORIST ORGANIZATIONS (DOC. #63)

---

Defendant Naser Almadaoji is charged with two counts of attempting to

provide material support to foreign terrorist organizations, more particularly ISIS

and ISIS Wilayat Khorasan (hereafter "ISIS-K"). This matter is currently before the

Court on Defendant's Motion in Limine to Preclude Testimony About Violence by

Terrorist Organizations, Doc. #63, and the Government's Response, Doc. #71. The

Court overrules Defendant's motion.

I.

Defendant anticipates that the Government will have its expert witness, Dr.

Lorenzo Vidino, testify about specific violent or terrorist acts perpetuated by ISIS

and ISIS-K. Defendant is willing to stipulate that ISIS and ISIS-K have been

designated as foreign terrorist organizations. He maintains that testimony by Dr.

Vidino and other Government witnesses concerning violent acts committed by these organizations is unduly prejudicial, particularly given that Defendant had no personal involvement in these terrorist activities. Defendant contends that the probative value of such testimony, including the display of videos and pictures of atrocities perpetrated by these organizations, is substantially outweighed by the danger of undue prejudice and confusion of the issues. He therefore asks the Court to exclude such evidence or strictly limit it under Fed. R. Evid. 403.

In support, Defendant relies on *United States v. al-Moayad*, 545 F.3d 139 (2d Cir. 2008). In *al-Moayad*, defendants were charged with providing financial support to Hamas and al Qaeda, foreign terrorist organizations. At the trial, a Government witness gave his eyewitness account about a bus bombing perpetrated by Hamas. The Government offered this testimony to show that Hamas engaged in terrorist activity.

The Second Circuit, however, held that the district court erred in admitting such testimony under Fed. R. Evid. 403. It found that the eyewitness testimony had minimal probative value, given that the defendants were not charged with planning or carrying out the bus bombing, and that the defendants offered to stipulate that they knew that Hamas engaged in terrorist activities, thereby eliminating the Government's burden of proof on this element. In addition, the eyewitness's testimony was cumulative, given other trial evidence about terrorist attacks carried out by Hamas. *Id.* at 159-61. The court concluded that, "[g]iven the highly charged and emotional nature of the testimony and its minimal

2

evidentiary value, the court's decision was arbitrary." *Id.* at 160. The Second Circuit also faulted the district court for refusing to give a limiting instruction which would have informed the jury that there was no evidence that the defendants were involved in the bus bombing incident. *Id.* at 162.

Almadaoji argues that, as in *al-Moayad*, the Court should exclude evidence of violent acts by ISIS and ISIS-K because it is not closely linked to the charged conduct. He is charged with attempting to provide material support to a foreign terrorist organization, not with planning or participating in any of the terrorist activities at issue. Moreover, similar to the defendants in *al-Moayad*, he is willing to stipulate that ISIS and ISIS-K "have been designated as foreign terrorist organizations." Doc. #63, PageID#443. He therefore argues that testimony or other evidence of the violence committed by these groups should be excluded as unduly prejudicial.

**II.**

In response to Defendant's motion, the Government notes that Defendant has not specified exactly what evidence he wants excluded. The motion appears to be limited to a request to exclude evidence of violent acts "in which Mr. Almadaoji had no involvement." *See* Doc. #63, PageID#443.[1]   To the extent that

---

[1]  The Government does plan to introduce evidence of Defendant's plans to engage in certain violent acts and of his discussions with Government witnesses concerning such acts.

3

Defendant seeks exclusion of all evidence and testimony concerning violent acts perpetrated by ISIS and ISIS-K, the Government opposes Defendant's motion.

The Government proffers several categories of evidence that may be encompassed by Defendant's motion.  These include: (1) testimony of a confidential human source concerning images and videos that Defendant posted to Telegram or commented on; (2) testimony by Dr. Vidino about specific acts of terrorism perpetrated by ISIS and ISIS-K; (3) numerous images and ISIS propaganda videos found on Almadaoji's phone and tablet; and (4) ISIS propaganda videos accessed from Almadaoji's email account.  Many of the images and videos graphically depict violent acts committed by ISIS and ISIS-K, including executions and beheadings.

The Government argues that this evidence is highly relevant to the elements of the charged offenses, and that the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice or confusion of the issues.  It further argues that Almadaoji's proposed stipulation is insufficient because it does not address all of the issues on which the proffered evidence is probative.  The Government also offers several reasons why *al-Moayad* is distinguishable from the case at hand.

### III.

Fed. R. Evid. 403 provides as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

### A.    Relevance

There can be little doubt that evidence of terrorist acts perpetrated by ISIS and ISIS-K is relevant to the charges brought against Mr. Almadaoji.  Evidence is relevant if it tends to make a fact more or less probable than it would be without the evidence, and it is of consequence in determining the action.  Fed. R. Evid. 401.

In order to prevail at trial, the Government must prove the following: (1) Defendant intended to commit the crime of providing material support or resources to ISIS and/or ISIS-K; (2) Defendant intended to provide himself to ISIS and/or ISIS-K to work under their direction and control; (3) Defendant knew that ISIS and/or ISIS-K are designated foreign terrorist organizations, engage in terrorist activity, or engage in terrorism; and (4) Defendant did some overt act which was a substantial step toward committing the crime. *United States v. Alebbini*, 979 F.3d 537, 546 (6th Cir. 2020).

The nature of the images and videos found on Mr. Almadaoji's cell phone and tablet, posted to Telegram, or accessed from his email account may help the Government prove the requisite *mens rea*, *i.e.*, that Defendant *intended* to commit the crime of providing material support or resources to ISIS and/or ISIS-K, that he *intended* to provide himself to work under their direction and control, and that he *knew* that they were designated foreign terrorist organizations or engaged in

terrorist activity or terrorism. The images and videos found in his possession and control help demonstrate that Defendant was aware of the violent acts that he would be expected to undertake as a soldier for ISIS and ISIS-K. *See United States v. Abdi*, 498 F. Supp. 2d 1048, 1071-72 (S.D. Ohio 2007) (Marbley, J.) ("Given that Defendant is being accused of aiding al Qaeda, the fact that he has images on his computer regarding al Qaeda and other terrorist organizations is highly relevant."); *United States v. Pugh*, 162 F. Supp. 3d 97, 116 (E.D.N.Y. 2016) (holding that evidence of terrorist propaganda found in defendant's possession was relevant to *mens rea* element of the crime); *United States v. Mostafa*, 16 F. Supp. 3d 236, 262-63 (S.D.N.Y. 2014) (holding that defendant's statements concerning the bombing of the USS Cole and the events of 9/11 provided "direct and clear evidence of the defendant's state of mind as to al Qaeda and its agenda.").

Dr. Vidino is expected to testify about the types, nature and extent of terrorist activity and terrorism perpetrated by ISIS and ISIS-K. He is also expected to testify that it is widely known that these organizations engage in terrorism. Again, such testimony is relevant to Defendant's state of mind and his knowledge that ISIS and ISIS-K engage in terrorist activities.

## B. Prejudice

Having determined that the evidence at issue is relevant, the next question is whether its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. The Court concludes that, under the

6

circumstances presented here, exclusion of the evidence under Rule 403 is not warranted.

As discussed above, Defendant relies heavily on *United States v. al-Moayad*, 545 F.3d 139 (2d Cir. 2008) for the proposition that such evidence is unfairly prejudicial. However, that case is factually distinguishable in many important respects. Even though the defendants had no connection to the suicide bus bombing in Tel Aviv, an eyewitness to the bombing was permitted to testify about it "at length" and his testimony was supplemented by photos and a video of the incident. The Government was allegedly attempting to show that Hamas engaged in terrorist acts.

However, given that the defendants offered to stipulate that they knew that Hamas engaged in terrorist activity, and given that there was considerable other trial testimony about terrorist acts committed by Hamas, the court found that the eyewitness testimony had "minimal evidentiary value." *Id.* at 160. Citing the "highly charged and emotional nature of the testimony" and the district court's refusal to give an instruction that would have limited its prejudicial effect, the court concluded that the district court erred in admitting the evidence. *Id.* at 160-62.

The evidence at issue in Almadaoji's case certainly has more than "minimal evidentiary value." Unlike the defendants in *al-Moayad*, who were charged with *financing* foreign terrorist organizations, Almadaoji is charged with attempting to provide material support by becoming a soldier for ISIS and/or ISIS-K. The

7

images and videos found on Almadaoji's electronic devices are part of the Government's narrative explaining why charges were brought against him. In contrast, omitting evidence of the bus bombing at the *al-Moayad* trial would not have disrupted the Government's narrative of the case. *See al-Moayad*, 545 F.3d at 161 (noting that the eyewitness testimony "constituted a significant break from the substance of the rest of the government's case-in-chief.").

Moreover, although Almadaoji has offered to stipulate that ISIS and ISIS-K have been designated as foreign terrorist organization, he has not offered to stipulate that he *knew* that they engaged in terrorist activity or terrorism, or that he intended to submit to their direction and control. This is crucial, given the Government's burden of proving that Defendant had the requisite *mens rea.* The images and ISIS propaganda videos found on his electronic devices are highly relevant to this issue.

Almadaoji's proposed stipulation is insufficient to warrant exclusion of evidence of violent acts perpetrated by ISIS and ISIS-K. In a felon-in-possession case, a defendant may stipulate as to his status as a convicted felon in order to prevent the jury from learning details of his previous crimes. *Old Chief v. United States*, 519 U.S. 172, 174 (1997). However, outside of that context, "[t]he government is not required to accept the defendant's stipulation, and the defendant has no right to selectively stipulate to particular elements of the offense." *United States v. Boyd*, 640 F.3d 657, 668 (6th Cir. 2011) (quoting *United States v. Hebeka*, 25 F.3d 287, 291 (6th Cir. 1994)).

For example, in *United States v. Luck*, 852 F.3d 615 (6th Cir. 2017), the court held that the district court did not abuse its discretion in refusing to allow the defendant to stipulate as to the child-pornographic nature of images found on his computer. By offering to so stipulate, the defendant sought to keep the actual images from the jury. The court held that the photos played "a vital role in the government's narrative of the concrete events comprising the charged offense." *Id.* at 626. Moreover, such images had "multiple utility," proving not only that they were pornographic, but also that the defendant had acquired them *knowing* that they depicted child pornography. *Id.* Finally, because "[s]howing the actual images paints a portrait far more vivid than a sanitized stipulation," the jury could better evaluate the "human significance" of the crime and "the law's moral underpinnings." *Id.* Even where the evidence in question is abhorrent or gruesome, the Government "is entitled to prove its case free from any defendant's option to stipulate the evidence away." *Boyd*, 640 F.3d at 668-69 (quoting *Old Chief*, 519 U.S. at 189)).

In the same way, Almadaoji cannot "stipulate the evidence away" by simply acknowledging that ISIS and ISI-K are designated foreign terrorist organizations. Evidence of the images and videos found in Almadaoji's possession is necessary to the Government's narrative and highly relevant to the *mens rea* element of the crimes charged.

There is no doubt that the evidence at issue is inflammatory and will evoke a strong emotional response from the jury. However, given the nature of the

9

charges brought against Almadaoji, such evidence is not *unfairly* prejudicial. The Government's presentation of this evidence is not gratuitous in nature; rather, it is necessary to prove the elements of the crimes charged.

Moreover, steps can --and will -- be taken to minimize any prejudicial effect. First, the Court will give a limiting instruction so that the jury is aware that this evidence is being presented only to establish Mr. Almadaoji's state of mind or intent, and to make clear that he was not involved in planning or carrying out the violence depicted in the photos or videos. Second, the Court will instruct the Government to edit any videos to redact or blur the actual moment of any execution or beheading depicted therein.[2] *See, e.g., Pugh*, 162 F. Supp. 3d at 118 (concluding that the probative value of videos of executions and beheadings, which were edited to blur or redact the actual motion of execution, was not substantially outweighed by the danger of unfair prejudice).

For these reasons, the Court concludes that the probative value of the evidence of violence perpetrated by ISIS and ISIS-K is not substantially outweighed by the danger of unfair prejudice or confusion of the issues. This is particularly true of any images and videos found in Almadaoji's possession.

---

[2] The Government has already indicated that it is amenable to this, but argues that the witness should be permitted to briefly describe what happens in the redacted portion of the videos. The Court finds this to be an acceptable compromise.

10

## IV.

For the reasons stated above, the Court OVERRULES Defendant's Motion in Limine to Preclude Testimony About Violence by Terrorist Organizations, Doc. #63. This ruling, however, does not affect Defendant's ability to object, at trial, to the admission of such evidence on other grounds.


Date: October 27, 2021                    _____

                                          WALTER H. RICE
                                          UNITED STATES DISTRICT JUDGE

11